UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 1:21-cr-00110 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| MICHAEL FROBOUCK, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In November 2020, a cooperating source for the FBI reported that Michael Frobouck had expressed the desire to raise an army to take the country back. R. 1, Criminal Compl. Aff. ¶ 7.[1] The source began talking to Frobouck about the collection of weapons stored at Frobouck's house. *Id.* ¶¶ 7–9. The source also introduced Frobouck to an undercover law enforcement agent, and as their relationship developed, Frobouck sold ammunition, explosive materials, and other military-surplus items to the agent in December 2020 and January 2021. *Id.* ¶ 10. In February 2021, Frobouck sold the agent a Federal Gas Riot Gun along with ammunition to fit it. *Id.* ¶¶ 12–13. Frobouck now faces charges of knowingly transferring an improperly registered firearm (that is, the gas gun with anti-personnel ammunition), and of knowingly receiving and possessing another firearm, a Cobray M-11 9-millimeter semiautomatic, also not rightly registered to him. R. 22, Indictment at 1–2. Frobouck has moved to dismiss

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

the indictment as insufficient. R. 67, Mot. Dismiss. For the following reasons, the Court denies the motion in its entirety.

## I. Background

In evaluating a pretrial motion to dismiss the indictment, the Court must accept the indictment's allegations as true. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Also, only for purposes of deciding this motion, the Court summarizes other as-of-now undisputed facts included in the February 2021 complaint affidavit of FBI Special Agent Barrett James Rife, as well as the for-now undisputed facts in the parties' legal briefs.

It is unclear when the FBI first started investigating Frobouck, but by November 2020 he was squarely in the agency's sights. In addition to the army-raising statement, Frobouck allegedly told the FBI's cooperating source that Frobouck considered certain politicians to be enemy combatants and that he envisioned an impending civil war. Criminal Compl. Aff. ¶ 7; R. 75, Gov't Resp. at 2. The source continued to interact with Frobouck and introduced him to the undercover agent sometime in December 2020. Criminal Compl. Aff. ¶¶ 8–10. Frobouck showed the source and the agent the basement vault in which Frobouck stored weapons. *Id.* ¶¶ 8, 12. That same month, Frobouck sold the agent various military-surplus items, including ammunition, explosive materials, and precursor chemicals. *Id.* ¶ 10.

Early in January 2021, Frobouck told the source and the agent about the Cobray firearm and explained that Frobouck had bought it from an associate. Gov't Resp. at 2. Later that month, Frobouck, the source, and the agent had another

meeting at Frobouck's house during which Frobouck showed them the 37-millimeter gas gun with corresponding 37-millimeter ammunition. Criminal Compl. Aff. ¶¶ 11–12; Gov't Resp. at 2–3. He discussed selling the gun and ammo to the agent. Criminal Compl. Aff. ¶ 12. Frobouck originally purchased the gas gun from an army-surplus store in Lombard, Illinois, in 1991, along with the "same tear gas canisters transferred to the undercover FBI agent." R. 72, Def.'s Br. at 2. Finally, on around February 2, Frobouck sold the agent the gas gun along with a case of eight 37-millimeter rubber projectiles and 44 gas canisters for $450. Criminal Compl. Aff. ¶ 13; Gov't Resp. at 3.[2] That sale triggered the sequence of events that led to Frobouck's indictment, beginning with the criminal complaint filed against him by Special Agent Rife on February 2 and continuing with the issuance of a warrant and a search of Frobouck's house on February 18—during which law enforcement found his Cobray. R. 1, Criminal Compl; Gov't Resp. at 3.

After the house search, law enforcement performed a query of Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) databases and did not find the gas gun or the Cobray to have been registered with the National Firearms Registration and Transfer Record. Gov't Resp. at 4. And so, on March 25, 2021 Frobouck was charged with illegally transferring, without proper registration, the gas gun with anti-personnel ammunition (Count 1); and of illegally receiving and possessing the Cobray, also without proper registration (Count 2). Indictment at 1–2.

---

[2]Unlike the affidavit of Special Agent Rife, Criminal Compl. Aff. ¶ 13, the government's response brief does not mention the sale of 44 gas cannisters, only the sale of the gas gun "along with a case of eight 37mm anti-riot rubber projectiles." Gov't Resp. at 3.

## II. Legal Standard

To challenge the sufficiency of an indictment, a defendant may file a pretrial motion (so long as the motion can be decided without a trial on the merits) under Federal Rule of Criminal Procedure 12(b)(3). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged ...." Fed. R. Crim. P. 7(c)(1). To be legally sufficient, an indictment must accomplish three things: "first, it must adequately state all the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, [it] must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002) (cleaned up).[3] Generally speaking, an indictment should align with the words of the statute, assuming that the statute specifies the elements that constitute the offense. *Id.* The indictment must "provide the defendant with some means of pinning down the specific conduct at issue" but need not include every relevant fact. *Id.* (cleaned up). Courts "review indictments on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.* (cleaned up).

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Count 1

Frobouck argues that Count 1 of the indictment is insufficient because, in his view, it charges him not based on a federal criminal statute, but rather on ATF Ruling 95-3, which was not adopted by Congress nor even by the ATF via the Administrative Procedure Act (APA). Def.'s Br. at 1–3. More concisely, he contends that Count 1 is insufficient because it fails to charge him for a statutory crime. R. 76, Def.'s Reply at 1. The government disagrees, Gov't Resp, and is correct; Frobouck is not charged under Ruling 95-3 and, in any case, that ruling is not subject to the APA.

Instead, the indictment charges Frobouck with violating statutory Sections 5841, 5861(e), and 5871 of Title 26 of the United States Code, which regulate the transfer of firearms. Indictment at 1. Specifically, Frobouck is charged with knowingly transferring a firearm, namely a destructive device, that was not registered to him in the National Firearms Registration and Transfer Record. *Id.* The indictment does *not* reference ATF Ruling 95-3. *Id.* What's more, Count 1 satisfies all of the legal requirements for a charge. *See Anderson*, 280 F.3d at 1124. It puts Frobouck on notice of the charge against him: it tracks the elements of Section 5861(e) prohibiting (1) the transfer of (2) a firearm that is (3) not properly registered. The indictment alleges that Frobouck (1) transferred a (2) firearm—a destructive device in the form of the gas gun and corresponding ammunition—(3) that was not registered to Frobouck as required in Section 5841. Indictment at 1. The indictment also informs Frobouck of the nature of the charge against him so that he can prepare a defense, as evidenced

by arguments raised now by Frobouck that are actually proper only for trial (if at all), not to challenge the sufficiency of the indictment. For instance, whether the gas gun is a firearm (or not) under the definition of "destructive device" in 26 U.S.C. § 5845(f)(2) is a question for trial, not a basis to dismiss Count 1. Likewise, Frobouck is correct that the government will be required to show that there was no proper registration of the gas gun with its ammunition, but again, that is an element to contest at trial. Def.'s Br. at 3. (So too can Frobouck argue later that the munitions he sold along with the gun are not anti-personnel projectiles.) Def.'s Br. at 1–2. Finally, the indictment is sufficiently specific and clear to allow Frobouck to plead and bar future prosecution as to Count 1.

    Frobouck mistakenly compares his situation to *United States v Picciotto*, which was an appeal of a protester's conviction for violating a Park Services regulation prohibiting her from storing excessive property for a political demonstration in front of the White House. 875 F.2d 345 (D.C. Cir. 1989). The Park Services regulation had been adopted without the notice and comment required by the APA. *Id.* The D.C. Circuit reversed Picciotto's conviction because of the Park Service's failure to adopt the applicable substantive regulation in accordance with the APA. *Id.* at 349. But unlike *Picciotto*, Frobouck is *not* charged of violating a substantive rule or regulation ("substantive" meaning a rule that has the force and effect of law and thus is subject to the APA's procedural requirements).[4] As already explained, he is only charged with

---

[4]Frobouck cites three other cases from other circuits that, like *Picciotto*, found that substantive regulatory requirements upon which convictions were based were adopted in violation of the APA and, thus, could not constitute the basis for indictment or conviction.

statutory violation of Sections 5841, 5861(e), and 5871. Indictment at 1. And aside from the fact that Count 1 only refers to statutes, ATF Ruling 95-3 is not a rule or regulation with the "force and effect of law" subject to the APA, *see Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015), but as Frobouck himself explains "is written to merely clarify a statute." Def.'s Br. at 1. ATF Ruling 95-3 interprets the definition of a "destructive device" subject to registration under Section 5845(f)(2) as including gas guns possessed with anti-personnel ammunition. ATF Ruling 95-3. But importantly, unlike so-called "legislative rules" authorized by statute and which take on the force and effect of law, the ATF's interpretation of Section 5845(f)(2) is not binding or conclusive. Instead, it is only an interpretive ruling "issued by [the ATF] to advise the public of the agency's construction of the statutes and rules which it administers." *Perez*, 575 U.S. at 96–97 (cleaned up) ("Section 4(b)(A) of the APA provides that … the notice-and-comment requirement does not apply to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.").

Indeed, as the government points out, the Seventh Circuit and other circuits have affirmed cases in which statutory interpretations offered by the ATF (that is, ATF rulings) were used, in part, to interpret the definitions under 26 U.S.C. § 5845 that classify different weapons as ones regulated (or not) by the National Firearms Act. *See United States v. Cash*, 149 F.3d 706, 707 (7th Cir. 1998) (relying, in part, on

---

*United States v. Reynolds*, 710 F.3d 498, 524 (3d Cir. 2013); *United States v. Valverde*, 628 F.3d 1159, 1169 (9th Cir. 2010); *United States v. Cain*, 583 F.3d 408, 424 (6th Cir. 2009). These three cases are equally inapplicable to Frobouck's situation because he is not charged with violating a binding rule or regulation with the force and effect of law and subject to the APA.

7

ATF Ruling 81-4 to confirm the conviction of defendants found guilty of illegally selling auto sears—devices to enable semiautomatic weapons to be used as automatic weapons and which ATF Ruling 81-4 classified as "machineguns" under 26 U.S.C. § 5845(b)); *United States v. Dodson*, 519 F. App'x 344, 348 (6th Cir. 2013) (affirming a sentence for a conviction that relied, in part, on ATF Ruling 81-4 that classified AR 15 drop-in auto sears as "machineguns" under 26 U.S.C. § 5845(b)). In short, Count 1 satisfies legal requirements and is sufficient.

### B. Count 2

Frobouck challenges the sufficiency of Count 2 of the indictment because the government misidentified the serial number of the Cobray in the indictment[5] and because, he argues, there is no evidence that the gun has ever been anything other than a pistol that is exempt from registration requirements. Def.'s Br. at 3–5.

First, correcting the Cobray's serial number in the indictment from the incorrect "988-0006325" to the correct "88-0006325" does not require dismissal of Count 2. That is because the needed deletion of one digit—the first "9"—in the serial number is not material and does not prejudice Frobouck. *See United States v. Field*, 875 F.2d 130, 133 (7th Cir. 1989) ("In general, amendments to an indictment will be allowed to stand if they do not change an essential or material element of the indictment so

---

[5]In addition to the serial-number problem, Frobouck also contends, without any more explanation, that "the firearm has been misidentified by the charging agent several times" and that the "mere identity of the firearm would be confusing to the jury." Def.'s Br. at 3–4. But he provides no context for those two assertions. He does not specify any of the other alleged misidentifications—other than the wrong serial number in the indictment—nor does he explain what he means when he says that the "mere identity" of the firearm would be confusing to the jury. So the arguments are rejected.

as to cause prejudice to the defendant.") (cleaned up). Obvious clerical or typographical like the one committed here can be corrected without the need to dismiss the indictment. *Id.* Frobouck does not explain how the inclusion of an extra digit at the front of the correct serial number is material or essential. That type of minor error goes to the "form, and not to the substance of the indictment." *Id.* at 134. Frobouck also does not explain how this clerical error might prejudice him. Based on his briefing, he knows exactly what gun the indictment is referring to—the Cobray M-11 9-millimeter (he points out that "Cobray" is only a logo). Def.'s Br. at 3–4. Things might be different if the serial number and gun's description were so wrong that Frobouck did not know what weapon the indictment referred to and thus could not prepare his defense. But that is not the case.

Second, the indictment charges Frobouck with receiving and possessing the Cobray as "any other weapon" without proper registration and provides him the citations to the statutory sections he allegedly violated: Sections 5841, 5861(d), and 5871. Indictment at 2. Frobouck thus has adequate notice of the elements of the charge against him, namely of (1) receiving and possessing (2) a firearm—an "any other weapon"—(3) not registered to him in the National Firearms Registration and Transfer Record. *See* 26 U.S.C. § 5861(d); *Anderson*, 280 F.3d at 1124. He can also prepare his defense and the charge is specific enough that a conviction would bar future prosecution as to Count 2. *Id.* So, the indictment as to Count 2 satisfies legal requirements.

9

The problem with Frobouck's arguments is that "challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) (cleaned up). The question of whether the Cobray is a firearm under Section 5845(e), which defines what constitutes "any other weapon," is for trial, not a basis for dismissal of Count 2. At trial, Frobouck can argue that the Cobray has never been a firearm under the category of "any other weapon," but rather just a pistol that has never been modified. Def.'s Br. at 4–5. The government might counter—as Frobouck anticipates—that there were modifications that turned the weapon from a pistol into "any other weapon" requiring registration. *Id.* Frobouck claims to have evidence in the form of ATF-tracking documentation classifying his Cobray as a pistol without modifications, *Id.* at 5, along with other possible proofs that he previews in his briefing. *Id.* at 3–5. The government, in turn, will present its own evidence. In short, whether there is evidence that the Cobray was ever anything other than a pistol when Frobouck received and possessed it will be decided by the trial on Count 2, not via a dismissal motion. Count 2 is sufficiently alleged.

### IV. Conclusion

For the reasons discussed in this Opinion, Frobouck's motion to dismiss the indictment is denied. The indictment is deemed to be amended with the correct serial

number of the Cobray. The parties shall confer on the next step of the case and file a status report by April 20, 2023. The status hearing of April 14, 2023 is reset to April 28, 2023 at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 7, 2023